IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION


DALE B. ADAMS                                                        PLAINTIFF


          v.                              Civil No. 09-3054


TYSON FOODS, INC.;
DEBBIE TROST; JAMES D.
SMITH; LELAND E. TOLLETT;
MARK GRAHAM; and ARTEE
WILLIAMS, Director, Arkansas
Department of Workforce Services                                    DEFENDANTS

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Dale B. Adams brings this employment discrimination action pursuant to Title VII, the

Age Discrimination in Employment Act (ADEA), the Americans with Disabilities Act (ADA),

the Equal Pay Act (EPA), the Sarbanes-Oxley Act, 42 U.S.C. § 1981, and a supplemental state

law claim under the Arkansas Civil Rights Act.

His complaint was provisionally filed *in forma pauperis* (IFP) and it is now determined

whether it should be served upon the defendants.  On December 4, 2009, Adams filed an

amended complaint (Doc. 7).  The amended complaint consists of one page in which the leading

paragraph of the complaint is re-stated apparently for the purpose of adding the claim under the

Arkansas Civil Rights Act.

### I.  Background

Plaintiff (hereinafter Adams) indicates he was interviewed and hired by Tyson Foods on

or about October 29, 2008.  The nurse at the Berryville, Arkansas, location then performed a

standard new hire physical and drug test on him.  He was informed his blood pressure was high and that he would need to get it lowered before he could begin work.  When he reported to work, Adams was informed he would have to see the nurse on duty to ensure his blood pressure was at normal levels.

Adams alleges when he reported to work on November 3, 2008, the nurse was talking rapidly requiring him "to move and talk quickly while she was taking his blood pressure." Additionally, Adams indicates the nurse was pumping the device while reading the blood pressure gauge which caused an inaccurate reading.  The nurse then asked for a letter from Adams' doctor stating he had been treated for high blood pressure.   On November 10, 2008, Adams states he reported to work with a letter from his doctor stating he did not have high blood pressure and didn't require treatment.

Adams states he was told he would make more than the base pay of $10.90 an hour if he worked in the deboning department.  Further, he indicates he worked for seven weeks before he received a raise to $12.40 an hour.  Adams states he was told by female workers that they received $12.40 an hour when they were hired and/or after only two weeks.

Adams indicates employees were hired for a ninety day probationary period and were to be trained during this period.  While other employees were trained for different positions, he states he was normally left at the hardest job on the line--lifting about 30,000 pounds of chicken out of a box each day for about eleven weeks.  Adams states he noticed other employees his age (forty-four) held the same position.

Adams alleges he was informed by lead man John Benzinger and another Tyson employee on separate occasions that they washed United States Department of Agriculture

(USDA) condemned chickens that fell on the floor at the Berryville, Arkansas, plant and put them on the assembly line for processing but could no longer do it at the Green Forest plant. Adams indicates he was told by supervisor Rebecca Hugg that it was okay to place rotten chicken wings that had broken bones in with the good chicken wings if it was not too many.  He indicates he witnessed supervisor Bones rapidly urging employees to clean up chemicals off of the floor before the USDA inspector saw it because it was a violation of food safety laws.  Adams asserts he witnessed Tysons placing 100's of frozen chickens on the production lines that may have been washed USDA condemned chickens.  Adams states he reported this violation to the Equal Employment Opportunity Commission on March 20th and March 26th, 2009.

Adams also maintains that Jesse Rivera refused to train him as a jack driver.  According to Adams, he was initially told that the money could not be spent to train him as a jack driver at the Berryville plant but when they were transferred to Green Forest he would be trained.  Once they were at Green Forest, Adams states Rivera became unfriendly towards him and wouldn't train him as a jack driver "giving Adams the indication that Tyson Foods was discriminating against him and weren't interested in keeping him employed." *Complaint* (Doc. 5) at page 9.

Adams states his wife, Cherie, is disabled with kidney disease, glomerulonephritis, and keratoconus.  Adams indicates he had to be careful not to get sick and bring any diseases home to his wife.

According to Adams, he got sick several times because of the plant being a cold and wet place to work.  Adams indicates Tyson Foods has a strict attendance policy that "requires employees to go to work even when sick." *Complaint* (Doc. 5) at page 10.

In December of 2008, Adams' automobile was damaged and no longer worked.

-3-

*Complaint* (Doc. 5) at page 10.  As a result, Adams missed work because of transportation problems.  *Id.*

He began riding to work first with Derrick Britten and then with Thomas Paradiso.  *Complaint* (Doc. 5) at pages 11-12.  On March 9, 2009, Adams alleges he informed Paradiso that he believed Tyson Foods would try to suspend or fire him.  *Id.* at page 12.  Adams showed Paradiso a press release entitled:  "Tyson Foods Facing Lawsuit for Violating Federal Laws Again."  *Id.*

Shortly after he began working on March 10th, Adams alleges supervisor Lloyd Ray Chancellor came to get him.  *Complaint* (Doc. 5) at page 12.  Toby Shearer then came into the room and asked Adams if he had a cell phone.  *Id.* at page 13.  Adams admitted he did.  *Id.*  He was then told cell phones are not permitted inside the plant.  *Id.*  Adams was escorted to the human resources office and told by Debbie Trost that he was suspended for three days.  *Id.*

According to Adams, seventy percent of Tyson employees have cell phones in their pockets at work and continue to do so.  *Complaint* (Doc. 5) at page 13.  Adams contends he was discriminated against and retaliated against for informing Paradiso that he was going to file a civil rights lawsuit against Tyson.  *Id.*

On the day he was supposed to return to work, March 13th, from the suspension, Adams alleges he was sick and called in to be absent from work and received a computer confirmation number.  *Complaint* (Doc. 5) at page 14.  Despite this, Adams states he was told by Paradiso at about 11:00 p.m. that he had been terminated by Toby Shearer for job abandonment for not showing up the day after his suspension was over.

On March 16th, Adams called Trost at 3:00 p.m. and left a message asking whether he

AO72A
(Rev. 8/82)

had been terminated or not.  When his call was not returned, at 4:00 p.m., Adams faxed a copy of a lawsuit to Tyson Foods.  At 10:00 p.m., Adams received a call from Paradiso who explained it was his understanding that Adams had not been fired.

On March 16th and March 17th, Adams states he called into work and also consulted legal counsel.  Adams returned to work on March 18th.  Adams submitted a grievance to James D. Smith requesting that he be paid for the three days he was suspended.  *Complaint* (Doc. 5) at page 16.

On April 14th, Adams contacted Smith and asked that the points he was assessed for missing work on March 16th and 17th be removed and that he be paid for those days since Tysons didn't let him know whether he was fired or not.  *Complaint* (Doc. 5) at page 16.  Adams maintains Tysons continued retaliation against him caused him physical pain.  *Id.* at page 17. He indicates he had to miss work on March 25th and April 9th "due to immense pain from constant retaliation and couldn't operate his hands properly."  *Id.*  He states he had an injury to his hands on March 19th due to the constant retaliation over several weeks and he reported it to Tyson Nurse Rachel Pendergast, Charlotte Bohlke, and Supervising Nurse Debbie Dewbre.  *Id.*

On March 23, 2009, Adams states his wife needed medical attention and they could not use their Tyson Foods insurance card because Tyson had put her wrong date of birth on the computer records.  When he completed his Tyson benefits information packet, Adams states he gave Tyson Foods a copy of his wife's driver's license and marriage license which both have her correct date of birth.

On April 2nd, Adams indicates he wrote Mark Graham a letter explaining that his wife's correct date of birth was not entered into the computer and she therefore could not use her

Tyson's insurance card.  *Complaint* (Doc. 5) at page 21.  Adams maintains Graham took no action to correct the error.  *Id.*

On April 9th, Cherie again attempted to use the insurance card for a doctor's visit and to obtain medication and could not.  *Complaint* (Doc. 5) at page 21.  Adams alleges he contacted Graham.  *Id.*  Graham indicated he had received the April 2nd letter.  *Id.*  After at least two conversations, Graham advised Adams that he would have to contact human resources at the Green Forest plant to update his record.  *Id.* at page 22.  Adams maintains Graham was retaliating against him because he had sent the fax transmission of a lawsuit to Tyson Foods in March.  *Id.*

Adams maintains he was wrongfully terminated on June 2, 2009.  *Complaint* (Doc. 5) at page 25.  He states his last day of employment was May 26th due to a minor injury to his back. *Id.*  He indicated he slipped and fell at work due to a wet floor.  *Id.*  He states he missed work on May 27th and called in sick and received a confirmation number.  *Id.*  He called in sick again on May 28th and received a confirmation number.  *Id.*  This led to his receiving over fourteen points under Tyson Foods point system and to his being fired.  *Id.*

Adams request for unemployment benefits was denied by the Arkansas Department of Workforce Services.  *Complaint* (Doc. 5) at page 28.  He has appealed the denial.  *Id.* at pages 28-29.

## II.  Discussion

A number of Adams' claims are subject to dismissal.  First, the Eighth Circuit has held that supervisors may not be individually held liable under Title VII.  *See e.g., Lee v. State of Minnesota, Dept. of Commerce*, 157 F.3d 1130 (8th Cir. 1998); *Spencer v. Ripley County State*

AO72A
(Rev. 8/82)

*Bank*, 123 F.3d 690 (8th Cir. 1997);  *Bonomolo-Hagen v. Clay Central-Everly Community School Dist.*, 121 F.3d 446, 447 (8th Cir. 1997).  For this reason, all Title VII claims against the individually named defendants should be dismissed.  *Lee*, 157 F.3d at 1135; *Bales v. Wal-Mart Stores, Inc.*, 143 F.3d 1103, 1111 (8th Cir. 1998)(the district court had properly held a Wal-Mart employee named as a defendant could only be liable in his capacity as an employee of Wal-Mart).

Second, the courts have likewise held that the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.,* provides no basis for individual liability for supervisory employees. *See e.g., Medina v. Ramsey Steel Co.*, 238 F.3d 674 (5th Cir. 2001); *Smith v. Lomax*, 45 F.3d 402 (11th Cir. 1995)(Title VII and ADEA).  For this reason, all ADEA claims against the individually named defendants should be dismissed.

Third, the ADA provides for liability on the part of the employer for violations of its provisions; Supervisors cannot be held liable in their individual capacity.  *Sullivan v. River Valley School Dist.*, 197 F.3d 804, 808 (6th Cir. 1999)("Individual supervisors who do not independently qualify under the statutory definition of employers may not be held personally liable in ADA cases."); *Baird v. Rose*, 192 F.3d 462, 472 (4th Cir. 1999)("Because Title VII does not authorize a remedy against individuals for violation of its provisions, and because Congress has made the remedies available in Title VII applicable to ADA actions, the ADA does not permit an action against individual defendants for retaliation for conduct protected by the ADA.").  *See also, Lee v. State of Minnesota, Dept. of Commerce*, 157 F.3d 1130 (8th Cir. 1998)(supervisors may not be individually held liable under Title VII).

Fourth, with respect to the Equal Pay Act claim, while Adams maintains he was paid less

-7-

for a period of several weeks than female workers for the same work, he has not alleged any of the individually named defendants were responsible for the pay disparity. Thus, no Equal Pay Act claim is stated against the individually named defendants. *See e.g., Donovan v. Agnew*, 712 F.2d 1509 (1st Cir. 1983)(employing an economics realities tests to determine when an individual employee may be liable under the EPA); *Taylor v. St. Louis County Bd. of Election Com'rs.*, No. 4:07-cv-1544, 2008 WL 250367 (E.D. Mo. Jan. 29, 2008).

Fifth, Adams' claims under the Sarbanes-Oxley Act are subject to dismissal. Section 806 of the Act is entitled the Corporate and Criminal Fraud Accountability Act of 2002, Title VIII of the Sarbanes-Oxley Act of 2002 (SOX), codified at 18 U.S.C. § 1514A. It protects "whistleblowers" of publicly traded companies, by prohibiting employers from discriminating or retaliating against an employee who

> provide[s] information, cause[s] information to be provided, or otherwise assist[s] in an investigation regarding any conduct which the employee reasonably believes constitutes a violation of [18 U.S.C. §§] 1341 [mail fraud], 1343 [wire fraud], 1344 [bank fraud], or 1348 [securities fraud], any rule of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders, when the information or assistance is provide[d] to or the investigation is conducted by - (A) a Federal regulatory or law enforcement agency . . . .

An employee seeking protection under § 1514A must first file an administrative complaint with the Department of Labor. 18 U.S.C. § 1514A(b)(1)(A). The Secretary of Labor has delegated responsibility for receiving and investigating whistleblower complaints to OSHA;. *Carnero v. Boston Scientific Corp.*, 433 F.3d 1, 3 n.1 (1st Cir. 2006); 29 C.F.R. 1980.103(c). If a final decision is not made by the Department of Labor within one hundred and eighty days and there is no showing of bad faith on the part of the claimant, the claimant may file suit for de

-8-

novo review in the appropriate district court.  18 U.S.C. § 1514A(b)(1)(B).

In this case, Adams' SOX claim is subject to dismissal because he filed this case prior to having waited for a final decision from the Department of Labor or for the one hundred and eighty day period to expire.  In short, he failed to exhaust his administrative remedy before filing this claim.

Additionally, no SOX claim is stated on the facts alleged in the complaint.  SOX "does not provide protection for any type of information provided by an employee but restricts the employee's protection to information only about certain types of conduct."  *Day v. Staples, Inc.*, 555 F.3d 42, 54 (1st Cir. 2009).  The "types of conduct fall into three broad categories:  (1) a violation of specified federal criminal statutes:  18 U.S.C. § 1341 (mail fraud), § 1343 (wire fraud), § 1344 (bank fraud), § 1348 (securities fraud); (2) a violation of any rule or regulation of the SEC; and/or (3) a violation of any provision of federal law relating to fraud against shareholders."  *Id.*  SOX does not cover violations of the rules of the USDA, violations of employment discrimination laws, or the failure to report injuries to the Worker's Compensation Commission.  Adams has not even alleged that his communications involved, or related to, one of the laws listed in § 1514A.  His SOX claim therefore fails as a matter of law.

Sixth, Adams claims against the individually named defendants fail under the Arkansas Civil Rights Act.  The Arkansas Civil Rights Act, Ark. Code Ann. § 16-123-107(a)(1), guarantees "[t]he right of an otherwise qualified person to be free from discrimination because of . . . gender, or the presence of any sensory, mental, or physical disability" including "[t]he right to obtain and hold employment without discrimination."  The Act provides a civil remedy for "[a]ny individual who is injured by employment discrimination by an employer."  Ark. Code

-9-

Ann. § 16-123-107(c)(2)(A). The total compensatory and punitive damages recoverable are limited by the number of employees employed by the employer in each of twenty of more calendar weeks in the current or preceding calendar year. *Id.* Thus, while the term "employer" is not specifically defined, it is clear the Act does not contemplate individual liability on the part of supervisors and managers. Moreover, in interpreting the Act, the Arkansas courts have looked to decisions interpreting the federal civil rights laws in analyzing claims. *See e.g., Flentje v. First Nat'l Bank*, 340 Ark. 563, 570-72, 11 S.W.3d 5331, 537 (2000). As noted above, Title VII, the ADEA, and the ADA have all been interpreted to preclude individual liability on the part of supervisory employees.

Seventh, Adams' claim under 42 U.S.C. § 1981 fails. Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white persons." Section 1981 precludes intentional employment discrimination on the basis of race. *See e.g., Kim v. Nash Finch Co.,* 123 F.3d 1046 (8th Cir. 1997). On his intake questionnaire he filled out for the Equal Employment Opportunity Commission Adams indicated his race as "White." *Exhibit A to the Complaint* (Doc. 5-1) at page 1. He therefore does not fall within the protection afforded by § 1981.

Finally, the claims against Artee Williams the Director of the Arkansas Department of Workforce Services are subject to dismissal. Adams applied for unemployment benefits. He was denied the benefits and has appealed the denial. Adams may not circumvent the state process for claiming unemployment compensation and appealing a denial of the same merely

-10-

because he maintains the Department of Workforce Services "seems to lean in favor of employers." Ark. Code Ann. § 11-10-522 (Supp. 2009).  Moreover, it has been held that the employees of the Arkansas Department of Workforce Services or the Arkansas Employment Security Division are entitled to absolute immunity.  *See e.g., Jones v. Singer Career Systems*, 584 F. Supp. 1253 (E.D. AR. 1984).

### III.  Conclusion

I therefore recommend that all claims against James D. Smith, Leland Tollett, Mark Graham, Artee Williams, the Director of the Arkansas Department of Workforce Services, and Debbie Trost be dismissed.  I further recommend that all claims under the Sarbanes-Oxley Act and 42 U.S.C. § 1981 be dismissed.  By separate order the complaint will be served on Tyson Foods, Inc.

**Adams has fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  Hammond is reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 6th day of January 2010.

/s/ *J. Marschewski*

HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

-11-